UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MORRIS OLIVIER, JR. AND CANDACE OLIVIER** | * | CIVIL ACTION NO. |
| *Plaintiffs* | * | |
| | * | |
| **VERSUS** | * | JUDGE _____ |
| | * | |
| **AMERICAN SUMMIT INSURANCE COMPANY** | * | |
| *Defendant* | * | MAGISTRATE JUDGE _____ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

NOW INTO COURT, through undersigned counsel comes **MORRIS OLIVIER, JR.** and **CANDACE OLIVIER**, (hereinafter "Complainants"), who file their Complaint for Damages against Defendant, **AMERICAN SUMMIT INSURANCE COMPANY** respectfully averring as follows:

**I.    PARTIES**

1.

Plaintiff is **MORRIS OLIVIER, JR.**, a person of the full age of majority and domiciliary of Beauregard Parish, Louisiana.

2.

Plaintiff is **CANDACE OLIVIER**, a person of the full age of majority and domiciliary of Beauregard Parish, Louisiana.

3.

Made Defendant is **AMERICAN SUMMIT INSURANCE COMPANY**, a foreign insurance company authorized to do and doing business in the State of Louisiana, which may be served

through its registered agent for service of process, Hon. R. Kyle Ardoin, Secretary of State of Louisiana, 8585 Archives Avenue, Baton Rouge, Louisiana, 70801.

## II. JURISDICTION AND VENUE

4.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 and §1441 because complete diversity of citizenship exists between the parties and because the amount in controversy is greater than the minimum jurisdictional amount.

5.

Pursuant to 28 U.S.C. §1391(b), venue is proper in the Western District of Louisiana, Lake Charles Division because the property that is subject of this action and where the damages were sustained occurred within the Western District of Louisiana, Lake Charles Division.

## III. RELEVANT FACTS

6.

At all times relevant hereto, Complainants own the property located at 260 Duplechin Road, Ragley, LA 70657 (the "Property".)

7.

At all times relevant hereto, **AMERICAN SUMMIT INSURANCE COMPANY** provided a policy of insurance, number **LB000337-05** (the "Policy"), to Complainants covering the Property against perils including hurricanes, and provided the following types of coverages commonly known as Dwelling, Other Structures, Contents/Personal Property, and Additional Living Expenses/Loss of Use.

**A. Hurricane Laura**

8.

On or around August 27, 2020, Hurricane Laura caused significant damages to the Complainants' Property.

9.

Complainants promptly reported the loss to **AMERICAN SUMMIT INSURANCE COMPANY**, who assigned claim number **AS155226** (the "Laura Claim".)

10.

Due to the mandatory evacuation issued for Beauregard Parish, the severity of the storm, and the lack of utilities in the area, Complainants were forced to evacuate and incurred Additional Living Expenses/Loss of Use damages.

11.

As soon as practicable, Complainants took steps to mitigate the damages to their home at their expense to the best of their ability under the circumstances.

12.

On, or about September 14, 2020, an adjuster acting on behalf of **AMERICAN SUMMIT INSURANCE COMPANY** inspected the property and documented damages to the dwelling and other structures of the Property. The adjuster was given full access to the Property and his inspection was not limited by the Complainants in any way.

13.

The inspection of the Property on behalf of **AMERICAN SUMMIT INSURANCE COMPANY** constituted satisfactory proof of loss as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973.

14.

The inspection of the property was inadequate and did not accurately account for the full extent of the damages to the Property. Payments were issued to the Complainants based upon the inadequate inspection.

15.

Complainants were unable to make meaningful repairs to their Property with the insufficient proceeds allowed by **AMERICAN SUMMIT INSURANCE COMPANY**.

**B. Hurricane Delta**

16.

On or around October 9, 2020, Hurricane Delta caused significant damages to the Complainants' Property and exacerbated damages caused by Hurricane Laura.

17.

Complainants promptly reported the loss to **AMERICAN SUMMIT INSURANCE COMPANY**.

18.

Due to the mandatory evacuation issued for Beauregard Parish, the severity of the storm, and the lack of utilities in the area, Complainants were forced to evacuate and incurred Additional Living Expenses/Loss of Use damages.

19.

As soon as practicable, Complainants took steps to mitigate the damages to their home at their expense to the best of their ability under the circumstances.

20.

On information and belief, an adjuster acting on behalf of **AMERICAN SUMMIT INSURANCE COMPANY** inspected the property and documented damages to the dwelling and other structures of the Property. The adjuster was given full access to the Property and his inspection was not limited by the Complainant in any way.

21.

The inspection of the Property on behalf of **AMERICAN SUMMIT INSURANCE COMPANY** constituted satisfactory proof of loss as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973.

22.

The inspection of the property was inadequate and did not accurately account for the full extent of the damages to the Property. Payments were issued to the Complainants based upon the inadequate inspection.

23.

Complainants were unable to make meaningful repairs to their Property with the insufficient proceeds allowed by **AMERICAN SUMMIT INSURANCE COMPANY**.

24.

As a result of **AMERICAN SUMMIT INSURANCE COMPANY'S** failure to timely and adequately compensate Complainants for their covered losses, they were forced to incur the expense of retaining counsel and other expenses to accurately document their damage.

**C. Proofs of Loss**

25.

On or about February 17, 2021, a licensed engineer inspected the Property on behalf of, and at the extra expense of, the Complainants and created an estimate of damages that

documented significantly more damages to the dwelling and other structures than the original estimate prepared on behalf of **AMERICAN SUMMIT INSURANCE COMPANY**, all of which was as a result of the Insurer's decision to inadequately adjust the claim.

26.

Multiple demands for the release of unconditional tenders were sent to **AMERICAN SUMMIT INSURANCE COMPANY** along with Complainants' estimate demonstrating the true loss.

27.

Upon information and belief, Complainants submitted a list of Additional Living Expenses/Loss of Use expenses incurred and damaged Contents prior to obtaining representation.

28.

Multiple demands, including but not limited to, those described above, and list of Additional Living Expenses/Loss of Use expenses incurred, and list of damaged Contents all constituted satisfactory proofs of loss as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973.

29.

To date, and despite being provided with satisfactory proofs of loss, **AMERICAN SUMMIT INSURANCE COMPANY** has chosen to underpay the claims. Defendant is therefore in violation of La. R.S. §22:1892 and §22:1973.

30.

**AMERICAN SUMMIT INSURANCE COMPANY** failed to explain its denial or refusal to unconditionally tender the undisputed amount owed to Complainants.

31.

**AMERICAN SUMMIT INSURANCE COMPANY** failed to investigate or document their reasons for its denial or refusal to unconditionally tender the undisputed amount owed to Complainants.

32.

As a result of **AMERICAN SUMMIT INSURANCE COMPANY'S** failure to timely and adequately compensate Complainants for their substantial losses, the Property remains in a state of disrepair.

33.

The failure of **AMERICAN SUMMIT INSURANCE COMPANY**, as Complainants' insurer, to make an adequate and timely payment for damages sustained, despite being provided with satisfactory proof of loss, is arbitrary and capricious given Complainants' extensive damages, thereby rendering **AMERICAN SUMMIT INSURANCE COMPANY** liable in bad faith for failure to deal fairly with its insured, and consequently liable to Complainants for all damages under the law for property damages sustained by Complainants due to Hurricanes Laura and Delta, as well as penalties and attorney's fees pursuant to La. R.S. §22:1973.

34.

Upon information and belief, **AMERICAN SUMMIT INSURANCE COMPANY** misrepresented to Complainants the terms and conditions of the policy.

35.

Upon information and belief, **AMERICAN SUMMIT INSURANCE COMPANY** conducted the investigation and claims handling for Complainants' claims in bad faith as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973.

36.

Upon information and belief, **AMERICAN SUMMIT INSURANCE COMPANY** manipulated its pricing software to artificially suppress the cost of repairs below market value.

37.

Upon information and belief, **AMERICAN SUMMIT INSURANCE COMPANY** purposely or negligently failed to include adequate overhead and profit in its estimates of damages.

38.

Complainants have incurred or will incur additional expenses in restoring the Property as a result of **AMERICAN SUMMIT INSURANCE COMPANY'S** failure to timely compensate them for their substantial and covered losses.

39.

Complainants have incurred and will continue to incur additional living expenses/loss of use as a result of the damages caused to their Property by Hurricanes Laura and Delta, including those additional living expenses that will be incurred during the repair of the Property.

## IV. CAUSES OF ACTION

### A. Breach of the Insurance Contract

40.

Complainants re-allege and re-aver the allegations contained in paragraphs 1-39, above, as if restated herein.

41.

An insurance contract, the Policy, exists between Complainants and **AMERICAN SUMMIT INSURANCE COMPANY**.

42.

The Policy provides coverages for perils including hurricanes.

43.

Despite having received satisfactory proofs of loss for damages caused by Hurricanes Laura and Delta, **AMERICAN SUMMIT INSURANCE COMPANY** failed to timely tender adequate insurance proceeds as required by the Policy.

44.

**AMERICAN SUMMIT INSURANCE COMPANY** breached the policy when it failed to timely tender adequate insurance proceeds after having received satisfactory proofs of a covered loss by way of the inspection completed by the adjuster on behalf of **AMERICAN SUMMIT INSURANCE COMPANY**.

45.

**AMERICAN SUMMIT INSURANCE COMPANY** breached the policy when it failed to timely tender adequate insurance proceeds after having received satisfactory proofs of a covered loss by way of the multiple demands submitted on behalf of Complainants.

46.

By misrepresenting the terms and conditions of the Policy, **AMERICAN SUMMIT INSURANCE COMPANY** breached the Policy.

47.

By failing to conduct the claims handling for Complainants' claims in good faith and with fair dealing, **AMERICAN SUMMIT INSURANCE COMPANY** breached the Policy.

48.

By manipulating its pricing software to artificially suppress the cost of repairs below market value, **AMERICAN SUMMIT INSURANCE COMPANY** breached the Policy.

49.

By failing to include adequate overhead and profit in its estimates of damages, **AMERICAN SUMMIT INSURANCE COMPANY** breached the Policy.

50.

Complainants have suffered and continue to suffer damages as a result of these breaches of the Policy.

B. **Bad Faith**

51.

Complainants re-allege and re-aver the allegations contained in Paragraphs 1-50 above as if restated herein.

52.

The actions and/or inactions of **AMERICAN SUMMIT INSURANCE COMPANY** in failing to timely and adequately compensate Complainants for the covered losses under the Policy were arbitrary, capricious, and without probable cause, as those terms are used in

conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973, making **AMERICAN SUMMIT INSURANCE COMPANY** liable for statutory bad faith penalties.

53.

Under La. R.S. §22:1973, an insurer owes a duty of good faith and fair dealing to its insured and has an affirmative duty to adjust claims fairly and promptly. Failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. §22:1973.

54.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of La. R.S. §22:1973.

55.

La. R.S. §22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

56.

**AMERICAN SUMMIT INSURANCE COMPANY** is in violation of La. R.S. §22:1973 and §22:1892 for failing to provide Complainants adequate payment in connection with their claim despite having received satisfactory proofs of loss following its own inspections of the Property and following its receipt of independent proofs of loss from Complainants.

57.

**AMERICAN SUMMIT INSURANCE COMPANY'S** misrepresentation of the relevant facts and/or terms of the Policy was in bad faith.

58.

**AMERICAN SUMMIT INSURANCE COMPANY'S** failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claims was in bad faith.

59.

**AMERICAN SUMMIT INSURANCE COMPANY'S** failure to pay timely for damages it knew or should have known existed at the time it received the independent proofs of loss from Complainants was in bad faith.

60.

**AMERICAN SUMMIT INSURANCE COMPANY'S** manipulation of its pricing software to artificially suppress the cost of repairs below market value was in bad faith.

61.

**AMERICAN SUMMIT INSURANCE COMPANY'S** failure to include adequate overhead and profit in its estimates of damages was in bad faith.

62.

**AMERICAN SUMMIT INSURANCE COMPANY'S** handling of Complainants' claims was in bad faith.

V. <u>**DAMAGES**</u>

63.

Complainants re-allege and re-aver the allegations contained in Paragraphs 1-62 above as if restated herein.

64.

As a result of **AMERICAN SUMMIT INSURANCE COMPANY'S** breaches of contract, bad faith claims adjusting, and other bad acts, Complainants have incurred the following, non-exclusive damages:

a. Diminution in value of the Property;

b. Actual repair costs;

c. Reimbursement for personal repairs at the Property;

d. Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;

e. Damages to personal property/contents;

f. Additional living/loss of use expenses;

g. Mental anguish;

h. Penalties delineated in La. R.S. §22:1892 and §22:1973; and

i. Attorney's fees, other professional fees, and litigation costs associated with the bringing of this action.

**WHEREFORE**, Complainants, **MORRIS OLIVIER, JR.** and **CANDACE OLIVIER**, pray that Defendant, **AMERICAN SUMMIT INSURANCE COMPANY**, be served with a copy of this Complaint and be duly cited to appear and answer the allegations contained therein, and that after expiration of all legal delays and proper legal proceedings, there by a judgment entered in favor of Complainants and against **AMERICAN SUMMIT INSURANCE COMPANY** in an amount that will fully and fairly compensate Complainants pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial

demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

COMPLAINANTS FURTHER PRAY for all orders and decrees necessary in the premises, and for full, general and equitable relief.

Respectfully submitted:

*s/ J. Lee Hoffoss, Jr.*
J. LEE HOFFOSS, JR. (29254)
Email: lee@hdinjurylaw.com
DONALD W. MCKNIGHT (10042)
Email: don@hdinjurylaw.com
D. COOPER FOURNET (34549)
Email: cooper@hdinjurylaw.com
MAX E. GUTHRIE (32487)
Email: max@hdinjurylaw.com
JOSEPH P. NORMAN (36608)
Email: joe@hdinjurylaw.com
517 West College Street
Lake Charles, Louisiana 70605
Telephone:   (337) 433-2053
Facsimile:    (337) 433-2055

COUNSEL FOR PLAINTIFFS, MORRIS OLIVIER, JR. AND CANDACE OLIVIER